The next case on the calendar is Bille v. Coverall North America. Good morning, Your Honors, and may it please the Court. Norman Leon for the appellant, Coverall North America. While there are two issues I hope to touch on this morning, Your Honors, I think this case really boils down to one question. And that's whether a litigant can walk away from an arbitration before it terminates in accordance with the governing rules, then claim his obligation to arbitrate has been satisfied because he disagrees with a ruling that a duly appointed arbitrator made on an issue that both the court that compelled arbitration and the parties agreed was an issue for the arbitrator to rule on. So let me ask about that. I mean, are you taking the position that, in fact, Mr. Reeves could have paid? I don't know whether or not Mr. Reeves could have paid. I know that the arbitrator concluded he did not and that the district court had no authority to review that ruling. But the arbitrator's conclusion was a little bit more ambiguous than you are portraying, I believe. And, in fact, the AAA had granted his hardship application as to the filing fee. Isn't that correct? The AAA had granted his hardship application as to the administrative fees of the AAA without any documentary support. He's not even allowed to submit documentary support on that. He's not allowed to submit it. That's right. But he made certain representations and presented an affidavit. And, of course, the filing fee is far less than arbitrator's fees. Isn't that correct? I don't know that that's correct, Your Honor. Isn't the filing fee a few hundred dollars? That's the initial filing fee. There are also administrative fees and a final hearing fee charged by the AAA. Is it not reasonable to expect that the arbitrator's fees, as reflected in the bills, would be greater than the filing fee? That's not a reasonable expectation. Absolutely not, Your Honor. Not on this record. But, insofar as a hardship application was accepted to begin with, what exactly should Mr. Reeves have done rather than, I mean, because I think the implications of your argument are that he should have waited and just let the fees mount and mount against him. No. That's not the implication of my argument, Your Honor. And let me take the first part of your question first. What Mr. Reeves submitted to the AAA in connection with his hardship waiver was the exact same unsupported statements that he submitted to the district court in opposition to our motion to compel arbitration. Those are the same statements that the district court found incomplete and insufficient to support his claim that he was unable to afford the costs of arbitration. What the arbitrator found here is that Mr. Reeves did not substantiate his inability to pay. If he thought he had more evidence that would have substantiated that claim, he should have brought that evidence to the arbitrator. He presented it to the district court, and I take it you're not challenging that, right? You're just saying that he should have presented it and that the arbitrator had to make the decision that he was unable to pay. Is that right? The arbitrator had to make the decision, Your Honor. The district— Part of what the arbitrator said was, maybe yes, maybe no, but we can always figure this out after we run up the bills and the arbitration is done. Isn't that part of what he said? The arbitrator said that he could revisit the issue. If Mr. Reeves had additional evidence that substantiated his alleged inability to bear the costs of arbitration, he should have brought those to the arbitrator. The district court recognized— There's a couple of things I want you to clarify. First of all, I understand you think the district court can't gather additional evidence, but the question of whether something has been had under the agreement and whether the movement is in default, would you agree that that's a judicial—that's a court decides that under Section 3? It may have to stick with whatever the record was before the arbitrator, but the court decides whether or not either one of those criteria were met. Do you agree with that? I agree that the has-been-had formulation, Your Honor, is a question for the district court. I believe that under these circumstances, when the default or the waiver finding is based upon an arbitrator's ruling, that is an issue that needs to be presented to the arbitrator. That's exactly what we argued to the court below. Procedural issues like payment of fees and whether or not that constitutes a waiver— Let's focus on has-been-had then. So even if there's a determination by the arbitrator that he can't pay, if he just doesn't have the money, because maybe the arbitrator's determination was wrong, he just doesn't have the money to put up—and he tells the arbitrator, he tells your client, I don't have the money, I can't proceed, what would—if the arbitration was interminated, I understand that this procedure was not followed under Rule 57. Wouldn't that has-been-had? Could you argue that that has-been-had in accordance with the rules? The rules say the case would be terminated. Your client would have the option then at that point of paying, as they said they would do if a determination was made, or letting the arbitration terminate in it. Wouldn't that be a plausible reading of the term has-been-had? I don't think that concluding this arbitration had-been-had satisfies even the standard that the district court announced for it, Your Honor. The district court standard— I understand this may not be the facts here, but if it terminates because for whatever reason Mr. Reeves can't pay, says he can't pay, he just said, I can't pay, and it terminates, isn't there an argument that that has-been-had in accordance with the AAA rules? If it terminated in accordance with the AAA rules, the answer would be yes, Your Honor. But this did not terminate in accordance with the AAA rules. We know from the December 4th letter that the AAA sent out to Mr. Reeves, that's at App 441, that there were a host of options available to Mr. Reeves to continue in arbitration even if, in fact, he did not have the ability to pay the arbitrator's costs. Number one, they could have asked the arbitrator to proceed without the deposit. Number two, they could have asked the arbitrator to resign so that they could appoint an arbitrator who would proceed without deposits. He just ignored those. He withdrew from arbitration the day before his deposit was due. What if he could have asked for your client to front the deposit, right? And that could have been triggered if, in fact, the governing rules were followed here, but they were not. This is how— And Rule 57 contemplates that there will be a suspension before termination, right? Correct, Your Honor. So if those rules had been followed after the discussion about inability to pay, there could have been an initial suspension, exploration of options, and then a pronouncement of termination for inability to pay by the arbitrator? Is that how it works under the rules? That's exactly how it works, and that's what should have happened here. If the arbitrator had been given an opportunity to suspend the arbitration and had said, cover all, either you pay or we're going to terminate, and then he terminated, that would, number one, be in accordance with the rules, and we wouldn't be here, because the law is clear that when an arbitration terminates in accordance with the rules, it has been had. Again, we didn't have that here because he simply walked away. What prevented cover all from offering to pay? The arbitrator concluded we did not have to, Your Honor. You're arguing you were caught off guard because the arbitrator ruled in your favor and then he just withdrew. Exactly. So you think you could not have reinstated it, saying, oh, we have a misunderstanding here, we can offer to cover these expenses the way we represented to the district court that we would, and we can start this again, revive the arbitration. That was not available to you. Is that right? That's available to Mr. Reeves. He can easily go back to the AAA and refile his arbitration and follow the rules that the parties agreed would govern their arbitration and that the Supreme Court has made clear multiple times need to be rigorous. What would you have between December 10th when his counsel wrote the email to the AAA staff saying, Mr. Reeves can't afford the arbitrator fees for this arbitration, so we will not be continuing the arbitration. Why wouldn't that give your client an opportunity to put a letter in saying, wait a second, before you end this arbitration, we're willing to do this, we're going to pay the deposit, or we'll pay the whole fee. Because it wasn't until January 6th that the AAA staff closed the case. That silence was a little deafening there. I think with respect, Your Honor, that that's the reason that the district court's ruling just turns reason on its head. We submitted an issue to the arbitrator by agreement and pursuant to the party's arbitration agreement, and he ruled that Mr. Reeves had not sustained his burden. We have been found to have waived and the arbitration to have been concluded because we abided by the arbitrator's ruling. There is no case in the country that has ever done that. That is like a district court issuing a discovery sanction if we fail to produce documents that the court said we didn't have to produce. The arbitrator's ruling here was an interlocutory decision on a procedural issue that the case is uniformly made clear is committed to the arbitrator, that the district court does not have the right to review. And whether you characterize this as an unconscionability determination, a vindication of rights determination, an ability to pay determination, the end result is exactly the same. Instead of giving the arbitrator's ruling the kid-glove treatment that courts always give arbitrator's rulings, the district court just disregarded it, pretended it did not exist, and eviscerated our right to arbitrate. Can I just ask one question? I know this isn't this case, but going to when an arbitration has been had, would an arbitrator's determination that it was over because of any procedural rule that they invoked end up putting us in a situation where an arbitrator had been had? Here, my colleague was asking about a situation in which the arbitrator says, you're unable to pay, I'm closing it because you're unable to pay. And you said that would be a termination. I assume that there are rules that say, if a party withdraws, you can terminate the arbitration. So if a party withdraws, has an arbitration been had? If the arbitrator says, well, you don't want to participate, I'm terminating the arbitration. Would that mean that an arbitration had been had under Section 3? I think that the answer to your honest question is yes, and I think that stems from the formulation of the rule that the district court put forth. We have no quarrel with the district court standard that an arbitration has been had when it's begun, transpired in part, and terminated in accordance with the governing rules. The problem with that standard here, when we part ways with the district court, is because that's not what happened in this case, and the record makes that indisputable. But it could be terminated in accordance with the rules, even if Mr. Reeves doesn't pay, even though the arbitrator said he had ability to pay. It still could be terminated in accordance with the rules, right? I think there are other provisions available to the arbitrator to terminate, but again, that did not happen here. The arbitrator was not involved at all in the decision to close this arbitration. Good morning, Your Honors. I'm Shannon List-Riordan for plaintiffs. So, in this case, the district court in the first place compelled arbitration based on a finding that there was not substantive unconscionability because, at the time, it was speculative, the court said, what Mr. Reeves might be required to pay in arbitration, and two, because Coverall promised the district court that it would pay if, in fact, Mr. Reeves was ordered to pay something he couldn't afford. It was completely... Well, no, I didn't say exactly that. It said, if the AAA determines that he can't pay, then we will pay. Yes. So, the AAA granted his hardship waiver finding he couldn't even afford the initial filing fees. Coverall's argument is entirely disingenuous because it spent the arbitration fighting tooth and nail to make sure that Mr. Reeves was billed for an amount that they knew that he couldn't pay. And, if you look at the arbitrator's decision, ultimately, the arbitrator ruled that he had to pay because it essentially relied on the district court's original finding that there was no substantive unconscionability, which is sort of circular because, at the time, the district court said it was speculative about what he might have to pay. Ultimately, the AAA told him that they sent him a bill for nearly $4,000. They did lay out several options, and one of the options, if he didn't pay it, was that they could proceed with it and it was completely reasonable for him to say, wait a minute, I don't want to have a collection agency come after me for $4,000. But he didn't know what option the AAA might take, and there was this risk, there was serious risk he was going to, in addition to his other financial hardships he was facing, that he was going to have collection efforts come after him for nearly $4,000. It was utterly reasonable for him to say, wait a minute, I can't do this, and as your Honor pointed out, the silence was deafening. If Coverall really wanted to arbitrate, it could have said I know, but the flip side is, your client had a lot of options, and there were a lot of steps that should have taken place to give them a chance to pay for your client before this proceeding would have suddenly ended with them getting a favorable ruling from the arbitrator that he couldn't pay. So they're thinking, okay, the arbitrator has reviewed the evidence, has said that there's no evidence that he can't pay. So they're just sitting there thinking they've prevailed on that issue, and all of a sudden your client withdraws. And they're supposed to be found in default? We're going to find Coveralls in default when they get a favorable ruling from the arbitrator that your client can pay, and your client withdraws. We're going to have to say that's a default on their part? Your Honor, the arbitrator didn't find that Mr. Reeves can pay. If you look at 439... He didn't provide adequate supporting evidence, right? It said that Mr. Reeves... If you look at the arbitrator's decision, Judge Hall found... Yes, I'm looking at 439. Judge Hall found that because the claims brought by Mr. Reeves were brought under state law, the arbitration provision issued did not prevent him from vindicating important rights. In addition, Judge Hall found that Mr. Reeves found to meet his burden on the claim of unconscionability due to the cost-sharing provision, and then he relied on Judge Hall. But after that, in arbitration, he submitted an affidavit to the AAA detailing his income, the meager amount of his savings, the fact that he was receiving unemployment. Based on that, the AAA determined that he was entitled to a waiver of the initial filing fees. He had submitted that evidence. Inexplicably, the arbitrator said that he hadn't submitted any evidence, but they were relying on what Judge Hall had said before he had submitted that evidence. What about the idea that this still was not in accordance with AAA rules, that there could have been a suspension, there could have been a more orderly exploration of the tentative commitment, or whatever kind of commitment you'd like to characterize it at, of coverall to cover his share of the cost going forward, and this was not orderly. He just withdrew at that point. He was counseled at that point, too, wasn't he? Yes, Your Honor. He did not withdraw. What happened throughout the arbitration, the entire argument was that Mr. Reeves could not afford this. The AAA initially determined that the employment rules would apply so that he wouldn't have to pay fees. Coverall bullied the AAA into changing their mind on that and applying the commercial rules. The entire fight was Coverall was doing everything possible to stick him with this bill. Ultimately, that happened. He gets this letter on $4,000. If it's not paid, one of the options is that the AAA may continue and will undertake collection efforts for the outstanding balance. He said, I can't do this. If this is what's going to happen, I can't continue with arbitration. There was a pause. Coverall didn't step in and comply with its promise to the district court to pay, and a month later, it was closed. So you're going to go back to the arbitrator and say, this condition would bankrupt me. I can't do this. If he had said that, the arbitrator might have said, well, I think we're going to have to suspend under Rule 57 and explore options. Your Honor, that's exactly what he said. That is exactly through the argument to the arbitrator. That is exactly what he said. I cannot afford this. If you make me pay this, I will not be able to do arbitration. Specifically, the condition that you're relying on today, that I can't put myself in a situation where there's a possibility of collection efforts? Yes. Yes. That was the I rejected that and relied on Judge Hall's earlier finding that at that point, he hadn't shown substantive unconscionability. Was there ever a demand by your client or by the arbitrator that Coverall cover the cost, the entire cost, or the case, or the arbitration would be terminated? Yes. Where in the record did you demand that they pay and that AAA and or AAA demanded that they pay? I don't know whether all of the underlying briefing from the arbitration is included in the record, but the entire point of the arbitration was him saying that he couldn't afford it, he couldn't pay. What can you point to in the record? Excuse me? What can you point to in the record? Well, I know what we have in the record is we have, let's see, his affidavit, which is 497 of 498 that was submitted to the AAA, in which he explains his financial circumstances. When the district court said this, while neither party has submitted evidence that the AAA requested or ordered that Coverall pay Reeves' expenses, is the district court wrong when they say there's no evidence of any request or order that Coverall pay the expenses? Page 496 of the federal sub of the district court opinion. I mean, that is a mistake, because he did submit this evidence. He submitted the fee waiver, which is in the record, detailing his financial circumstances. The fee waiver is not a request or an order that Coverall cover the cost of the arbitration. The entire briefing that was done to the arbitrator was for Coverall to pay for it, not Mr. Reeves, because he couldn't afford it. That is what led to the arbitrator's ruling saying no, and again, the arbitrator inexplicably relied on Judge Hall's earlier finding that he had shown that his claim that he might be charged thousands of dollars is speculative. It wasn't speculative actually after he got this bill from the AAA. And again, if you look at app 497, 498, he says that he explains how during the pandemic his finances had worsened even more. And he said the affidavit was submitted to the AAA. Yes. This is in October 2020. Paragraph 6 on app 498 says, if I had to pay thousands of dollars in arbitrator expenses and compensation in order to pursue my case against Coverall and arbitration, I would most likely be forced to drop my claims because this is an expense my family, this is not an expense my family can afford. And on app 500 and 501 you see the affidavit that he had previously signed that explains the extent of his expenses. This $4,000 Those three chapters are about the hardship waiver. No, no, no. App 500 is about the hardship waiver and the affidavit on 497, 498 was submitted to the arbitrator when the arbitrator was making a decision about whether he would have to share the fees or whether Coverall would have to pay the whole thing. The whole fight was over whether Coverall had to pay it. Did the arbitrator have access also to the hardship waiver? Yes, yes he did. And we showed that to him. And did the arbitrator ask for more direct information about Mr. Reeves' financial state? Did he? The hardship waiver says please don't attach bank statements, tax returns or any other documents but the arbitrator seemed to be concerned that the claim of hardship was inadequately supported. In what circumstance did Mr. Reeves attempt to submit more? Did the arbitrator not ask for more before ruling? I don't recall the arbitrator asking for more but again he did submit this affidavit that said app 497, 498 where he gave more information in an affidavit. He said he wouldn't be able to continue if he had to pay these fees. The arbitrator's decision which is at app 438 and 439 again in saying that he hasn't submitted sufficient evidence, he's referring to Judge Hall's order which was before he submitted this evidence. Can I ask you a more basic question on rule 57? Doesn't rule 57 cover when the parties for whatever reason are not paying the fees? Doesn't rule 57 set forth the procedure that's followed if the fees are not paid? Yes or no? I'm sorry, rule 57? Rule 57 that talks about suspending the arbitration for a period of time and then if the fees aren't paid for the arbitrator to terminate it. Isn't that the procedure when the fees for whatever reason can't be paid? Yes, so exactly. Let me ask the question. I'll let you answer. Then if that this has been had in accordance with the AAA procedures, if they have a procedure, rule 57 and it wasn't followed, how can this have been had? Yes, so your honor, that's exactly what happened. So on, before his bill was due, he said, I can't afford to pay this. If you're gonna make me pay this, I can't continue. There was a gap of time at which you may say that there was an opportunity then for Coverall to say well we'll pay it, pursuant to rule 57. They didn't do that even though they had promised the district court they would. And then a month later, that is when the AAA closed it. The AAA didn't close it the next day. Rule 57 also provides that if the arbitrator compensation or ad charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment. So the notice from the AAA seemed to me potentially to flag that there was a problem and to invite, although not order anyone, Coverall in particular, to make up the difference. But the rules suggest that that is part of the operation of the remedies for non-payment provision. Right, right. Well, Mr. Reeves gave the AAA the opportunity to do that. He said, I can't pay this. If you're making me pay this, I can't continue. There was a gap of time, and then the AAA shut it down. Rather than saying, well remember, once again, Coverall, you could pay this. They didn't do that. And also, keep in mind that on review here, the district court's factual findings are entitled to deference in this court reviews for clear error. The district court found that arbitration had been had. The district court found that Coverall waived arbitration when it didn't comply with the promise it had made to the district court that led the district court to compel arbitration in the first place. The district court was initially very concerned about whether it could compel arbitration given this cost splitting, but it said, well look, I don't have evidence here that he's going to be billed thousands of dollars and Coverall has offered to pay it. So that's, those are the conditions under which the district court compelled arbitration. When we came back two years later, we said he was billed $4,000 and Coverall not only didn't pay it, it fought tooth and nail to make sure that that bill was stuck to Mr. Reeves. And the district court was well within its discretion to say, you lied to me, Coverall, and I find that arbitration has been had, and I find that you went back on your promise and you waived arbitration. And that should be deferred to by this court. Thank you, Your Honors. Your Honors, I just had a few brief points I wanted to make. The first one is that the appeal determination that is reviewed to Novo, I did want to address the representation issue, just to be clear. What I said to the district court was that we would pay the cost if the arbitrator determined that Mr. Reeves could not. I never said we would pay if the arbitrator concluded that Mr. Reeves did not substantiate his burden of proving he could not pay those costs. And I think it's notable that this argument that the district court came up with, plaintiffs didn't even raise it in the court below. It wasn't until appeal that they claimed that anything that we did was somehow contrary to a representation that we made to the court. Second, there is nothing in the AAA's letter on December 4th that talks about collections. It talks about opportunities to move forward if you can't pay the deposits and Mr. Reeves ignored every single one of them. Wait a minute, the first bullet says the arbitrator may proceed without full deposits and the AAA will continue our efforts to collect any outstanding balance. Why was Mr. Reeves justifiably concerned that he was going to start hearing from collection agencies? That's not what it's talking about, Your Honor. That's talking about invoices from the AAA. That's not the process. The AAA doesn't send deposits out for collection while an arbitration is pending. In all my years, I've never seen that happen. I'm sorry, what does that refer to then? It's during the course of the arbitration, the AAA will send out invoices regularly saying what's owed. If they're not paid, Rule 57 is invoked. The arbitrator can suspend the operation of the arbitration and say other party, you pay. If you don't pay, I'm going to terminate. What about the argument that this essentially was a Rule 57 dynamic going on here? What's your response to that? It's not a Rule 57 dynamic. What would a Rule 57 dynamic look like? An order from the arbitrator, which is what happened in every single  So the December 4th notice wouldn't be sufficient? Not at all, Your Honor. Again, in all of the cases Rule 57, though, says that if the arbitrator compensation has not been paid in full, the AAA may so inform the parties. Not the arbitrator will inform the parties. It says the arbitrator or the AAA. I'm reading the rule right now. It says the AAA may so inform the parties in order that one of them may advance the required payment. It says Rule 57 Act 258? At 259, Your Honor. I was looking at the initial statement about remedies for not paying. And I'm looking at the specific subdivision that governs this, 57E on page 259. Upon receipt of information from the AAA that full payments have not been received the arbitrator, on the arbitrator's own initiative, or at the request of the AAA or a party, may order the suspension of the arbitration. If no arbitrator has yet been appointed, the AAA may suspend the proceedings. That's the way it works. Before an arbitrator is appointed... But the rule also provides, as I read, correct? Yes, but that's not what this is about, Your Honor. We never got to the point where coverall's obligation to make the decision in terms of whether it was going to jump in and pay was triggered. That's because there was never a suspension... Even apart from an obligation, even apart from an obligation, and I guess we could have different understandings about and the District Court may have had a different understanding, was there anything that prevented coverall from noticing the problem and offering to pay so that the arbitration could go forward? Other than adhering to the terms of the party's agreements and believing that the arbitrator's ruling should be bound, I'm not aware of anything that prevented us. But we believe that the arbitral process should be what it is. The arbitrator made a ruling on an issue that was his and his alone to make. Nothing, no case, has found waiver or that an arbitration has been had under those circumstances. Thank you, Your Honor.